Margaret JACKSON,
Employee/Appellant,

v.

MIDWEST YOUNGSTOWN
INDUSTRIES, Employer/Respondent.

No. 62372.

Missouri Court of Appeals,
Eastern District,
Division One.

March 23, 1993.

John J. Larsen, Jr., St. Louis, for appellant.

John F. Sander, Riethmann & Valentine, St. Louis, for respondent.

AHRENS, Presiding Judge.

Claimant, Margaret Jackson, appeals from a Final Award of the Labor and Industrial Relations Commission (Commission) denying her workers' compensation benefits. Claimant injured her knee when she fell in the parking lot of a post office at which she stopped on her way to work. An Administrative Law Judge (ALJ) entered an Award in favor of claimant. The Commission reversed the Award and entered a Final Award denying compensation, finding the accident did not arise out of and in the course of claimant's employment with employer, Midwest Youngstown Industries (Midwest). We affirm.

The evidence reveals that on May 3, 1988, the date of injury, claimant was employed by Midwest as a sales designer, a salesperson, and a specialist in kitchen and bath design and remodeling. Claimant was employed by Midwest on March 21, 1988, to pursue and solicit referrals for remodeling projects, prepare remodeling plans, obtain prices from suppliers, and prepare estimates and proposed contracts for remodeling. Much of the record consists of evidence relating to the employment relationship between claimant and Midwest. Because we do not reach this issue in disposing of the case, we do not detail such evidence here.

On the day of her injury, claimant stopped at the post office on the way from her home to the Midwest office. She picked up a personal package from her daughter and mailed a sympathy card to prospective customers who had experienced

a death in the family. As she was returning to her car, claimant fell and sustained the injuries to her right knee which are the subject of her claim against Midwest.

■ Appellate review of this case is limited to a determination of whether the Commission's decision is supported by competent and substantial evidence, upon review of the entire record and consideration of the evidence in a light most favorable to the award. *Scheper v. Hair Repair, Ltd.,* 825 S.W.2d 1, 3 (Mo.App.1991); § 287.495.-1(4) RSMo 1986.

In point one, claimant asserts the Commission acted in excess of its authority by adjudicating the issue whether claimant's injuries arose out of and in the course of her employment, because Midwest's answer to the claim for compensation was not timely filed. Claimant contends her employment status and claim that her injuries arose out of and in the course of her employment must be taken as admitted pursuant to 8 C.S.R. 50–2.010(12) and (13). Pursuant to 8 C.S.R. 50–2.010(12), the employer and/or insurer is required to file an answer to the claim within fifteen days from the date of acknowledgement thereof by the Division of Workers' Compensation. Further, "the statements in the claim for compensation shall be taken as admitted" unless the answer is filed within that fifteen days. 8 C.S.R. 50–2.010(13). Claimant contends the answer was filed on the sixteenth day, one day after the fifteen-day period prescribed in 8 C.S.R. 50–2.010(12).

Midwest filed an answer to the claim for compensation on April 12, 1989.[1] On April 27, 1990, the first day of hearing on the claim and more than a year after Midwest filed its answer, claimant's counsel made the following statement concerning the issues in dispute: "It will be an issue as to whether the failure of the employer/insurer to file an Answer within the time prescribed by law would result in admission on their [sic] part as to my client's employment status and entitlement to temporary total disability benefits at the maximum rate." However, claimant had made no

objection to the filing of the answer, no motion to strike it as untimely, and no request to limit the evidence at the hearing. Further, claimant introduced no evidence at the hearing concerning the issue and made no request that the ALJ take judicial notice of the Division's file. The ALJ heard evidence from each party on whether the injury arose out of and in the course of claimant's employment and whether claimant was an employee. Neither the ALJ nor the Commission made any finding or conclusion as to the timeliness of Midwest's answer.

■ We need not in this case determine the issue of the timeliness of Midwest's answer. In *Hendricks v. Motor Freight Corp.,* 570 S.W.2d 702 (Mo.App. 1978), this court found that an employer's failure to file an answer within the time prescribed by 8 C.S.R. 50–2.010(12) resulted in the admission of the *"fact of the accident"* pursuant to 8 C.S.R. 50–2.010(13). *Hendricks,* 570 S.W.2d at 707 (emphasis added). However, whether an injury arises out of and in the course of employment is ultimately a question of law. *McClain v. Welsh Co.,* 748 S.W.2d 720, 724 (Mo.App. 1988). In our view, the provision in 8 C.S.R. 50–2.010(13) that the "statements" in a claim shall be taken as admitted for failure to file a timely answer does not include an admission of the legal question whether a claimant's injury arose out of or in the course of the claimant's employment. Therefore, even assuming Midwest failed to timely file its answer, the question whether claimant's injuries arose out of or in the course of her employment was not removed from the Commission's consideration by operation of 8 C.S.R. 50–2.010(13). Under these circumstances, we cannot say the Commission acted "without or in excess of its powers." Section 287.495.1(1) RSMo 1986. Point one is denied.

In point two, claimant asserts the Commission erred in finding claimant's injuries did not arise out of and in the course of her employment, because "at the time of her injuries, she was performing an act which directly benefitted her employer." We disagree.[2]

---

1. The parties agreed that Midwest's answer was filed on that date.

2. Because we find the Commission's decision that claimant's injuries did not arise out of and

To be compensable, claimant's injuries must have resulted from an accident which arose out of and in the course of her employment. § 287.120 RSMo (Supp.1992). Generally, "an employee does not suffer injury arising out of and in the course of employment if the employee is injured while going or journeying to or returning from the place of employment." *McClain*, 748 S.W.2d at 724. However, claimant asserts her claim falls within an exception to the general principle, the "dual purpose" or "mutual benefit" doctrine, which provides that "if the work of the employee creates the necessity of travel, the employee is in the course of his [or her] employment and is entitled to compensation even though the employee is at the same time serving some purpose of his [or her] own." *Id.* at 726. To fall within this exception, the trier of fact must be able to infer that the journey would have been made even though the private purpose was absent. *Id.*

For the dual purpose/mutual benefit doctrine to apply in a case where the employee performed a concurrent service for the employer while on the way to or from work, the business motive must have been a "concurrent cause" of the trip. *Gingell v. Walters Contracting Corp.*, 303 S.W.2d 683, 688–89 (Mo.App.1957) (*citing Marks' Dependents v. Gray*, 251 N.Y. 90, 167 N.E. 181, 183 (Ct. of App.N.Y.1929)). A "concurrent cause" is "a cause which would have occasioned the making of the trip even if the private mission had been cancelled." *Id.* at 688. The determinative question is whether the mission was "of such character or importance that it would have necessitated a trip by someone if this employee had not been able or willing to handle it in combination with his [or her] ... journey." *Id.* at 689.

Whether claimant's injuries arose out of and in the course of her employment and the applicability of the dual purpose/mutual benefit doctrine must be determined from the facts and circumstances of each particular case. *Cox v. Copeland Bros. Constr. Co.*, 589 S.W.2d 55, 57 (Mo. App.1979). Here, the evidence reveals that at the time of her injuries, claimant had stopped at the post office while on her way to work. At the post office, she mailed a sympathy card to prospective customers who later signed a sales contract with Midwest. Claimant signed the card in her own name and in the name of Midwest, and used Midwest's return address. While at the post office, claimant also picked up a personal package from her daughter. Claimant acknowledged she could have mailed the sympathy card anywhere. Moreover, no one from Midwest sent claimant on an errand to the post office, and no one instructed her to mail the card. In fact, Midwest's owner testified he did not think it was businesslike for a salesperson to send a sympathy card to someone he or she had just met.

Claimant relies on *Lampkin v. Harzfeld's*, 407 S.W.2d 894 (Mo.1966) and *Wamhoff v. Wagner Elec. Corp.*, 190 S.W.2d 915 (Mo. banc 1945), in which the courts applied the mutual benefit doctrine and found the employees' injuries compensable. These cases are distinguishable, however, in that neither case involved an injury that occurred while an employee was going to or returning from work. Further, the employer in *Lampkin* instructed the employee to take the flu shot which resulted in her injuries, and the employer in *Wamhoff* knew and approved of the employee's private use of company machines that led to the injuries in that case. *Lampkin*, 407 S.W.2d at 897; *Wamhoff*, 190 S.W.2d at 918. Here, the employer did not direct claimant to go to the post office on her way to work, did not know she was doing so, and viewed the mailing of a sympathy card as unbusinesslike under those circumstances.

Claimant next cites *Shannon v. St. Louis Bd. of Educ.*, 577 S.W.2d 949 (Mo. App.1979), in arguing that the off-premises task leading to her injury was of benefit to Midwest. However, the employee in *Shannon* fell while attending a college class pursuant to an agreement with his employer. *Id.* at 952. Further, the injury in that

in the course of her employment supported by competent and substantial evidence, we do not decide the issue of claimant's employment status.

case occurred during regular working hours, after the employee had already arrived at the college and while he was on the way to purchase food before class. *Id.* The court in *Shannon* distinguished the employee's situation from the case of *Kammeyer v. Board of Educ.*, 393 S.W.2d 122 (Mo.App.1965), where the employee was on her way from home and had not yet reached the school. *Shannon*, 577 S.W.2d at 952.

Lastly, claimant relies on *Cox*, 589 S.W.2d 55, and *Hammack v. Nicholson*, 539 S.W.2d 788 (Mo.App.1976), and argues "it is not necessary that the work-related purpose be a dominant or primary purpose for the trip or off-premise activity; but, rather, it is sufficient if the work-related purpose is a concurrent cause."

*Cox* and *Hammack* are distinguishable on their facts. In *Cox*, the court applied the dual purpose doctrine to find an accident in which a plumbing foreman was killed while driving from his home to his employer's construction project arose out of and in the course of his employment. *Id.* at 60–61. The employee's responsibilities included carrying company equipment, working plans and specifications in his truck, making changes or corrections on his set of plans and specifications at home, and making the corrected and changed plans available at the job site on a daily basis. *Id.* at 58. Here, claimant was not on a sales call at the time of the injury, but was on her way to work. Further, claimant was not carrying materials or equipment to work, but simply mailing a sympathy card while she was at the post office picking up a personal package. In *Hammack*, the court upheld the Commission's findings that (1) the employer created the situation which necessitated the employee's trip to empty an unused load of asphalt, during which the employee was injured; and (2) the trip was a service errand undertaken so the truck would be available to the employer for work the next day. *Hammack*, 539 S.W.2d at 790. In this case, Midwest did not create the situation which necessitated claimant's trip, and the trip was not a necessary service errand to which Midwest had acquiesced.

Viewed in the light most favorable to the Commission's findings, we find no sufficient evidence to support an inference that claimant's trip to the post office would have been made absent claimant's need to pick up the personal package. *See McClain*, 748 S.W.2d at 726. Further, we are unable on these facts to find that claimant's trip would ultimately have had to have been made or that her mission was of such character and importance it would have necessitated a trip by someone else if claimant had not mailed the card. *See Gingell*, 303 S.W.2d at 688.

We find competent and substantial evidence to support the Commission's determination that claimant's injuries did not arise out of and in the course of claimant's employment.

The Final Award of the Labor and Industrial Relations Commission denying compensation is affirmed.

REINHARD and CRIST, JJ., concur.